**FILED**
May 05, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: cap
DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Crim No. 6:08-cr-00174-ADA-1** |
| | ) | |
| **FREDDIE ANDREW RAMOS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND FIRST STEP ACT OF 2018**

COMES Defendant, FREDDIE ANDREW RAMOS ("Ramos"), appearing *pro se,* and in support of this memorandum would show as follows:

## I. JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an

exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S.Ct. at 2690–91.

## II. STATEMENT OF THE CASE

### A. Procedural Background

On November 18, 2008, a grand jury sitting in the United States District Court for the Western District of Texas, Waco Division, returned a four (4) Count Superseding Indictment charging Ramos. See Doc. 14.[1] Count 1s charged Ramos with Possession with Intent to Distribute a Mixture or Substance Containing A Detectable Amount of Cocaine Base("Crack Cocaine"), in violation of 21 U.S.C. §§ 841(a)(1), and (b)(1)(C). *Id.* Count 2s charged Ramos with Possession of A Firearm In Furtherance of A Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(l)(A)(i). *Id.* Counts 3s and 4s charged Ramos with Felon in Possession of A Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id.*

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Western District of Texas, Waco Division in Criminal No. 6:08-cr-00174-ADA-1, which is immediately followed by the Docket Number.

On January 29, 2009, a Rearraignment Hearing was held wherein Ramos pleaded guilty to Counts 1s through 4s of the Superseding Indictment. See Doc. 28.

On April 8, 2009, Ramos was sentenced to a total term of 300 months' imprisonment, 5 years of Supervised Release, $4,000 Fine, and a $400 Mandatory Special Assessment Fee. See Docs. 37, 38.

On April 17, 2009, Ramos timely filed a Notice of Appeal. See Doc. 39.

On June 11, 2010, the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") affirmed the judgment of this Court. See Doc. 49.

On September 3, 2010, Ramos filed a Petition for a Writ of Certiorari to the Supreme Court of the United States. It was denied on June 21, 2011. See Doc. 50.

On June 8, 2016, Ramos filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"), which was denied on July 6, 2017. See Docs. 52, 53, 54, 58, 59.

On December 10, 2021, Ramos filed a Motion to Reduce Sentence - First Step Act, which was denied on May 19, 2022. See Docs. 62, 66.

**B. Statement of the Facts**

1. Offense Conduct

The government and Ramos, through the advise of his counsel, agreed to the following factual basis:

On July 11, 2008, Waco Police officers were on patrol walking through a parking lot at an apartment complex located in the Waco Division of the Western District of Texas. Officers noticed a gold mini-van with two individuals sitting inside. The mini-van began to back up and the passenger rolled down the window. Officer Robert Belcher, Waco Police Department, could see a razor blade sitting in the driver's lap. The driver identified himself as the Defendant, Freddie Andrew Ramos. While talking with the driver, Officer Belcher noticed a glass crack pipe which had a brillo pad inside the pipe. Ramos was asked to step out of the car, at which time he put the van in drive and tried to flee. Officers held on to the doors and were able to stop the minivan. Ramos was arrested and, during a search incident to arrest, a clear plastic baggie which contained two large crack cocaine rocks, was located in the Ramos' front right pocket.

The crack cocaine was submitted to the Texas Department of Public Safety and was determined to be approximately 4.65 grams of crack cocaine. The 4.65 grams of crack cocaine was intended for distribution by Ramos.

Further, on July 11, 2008, when Ramos was arrested, officers searched the mini-van he was driving and located an RG, Model 14, .22 caliber revolver, bearing Serial Number L781282. The firearm was found between the driver's seat, where Ramos had been sitting, and the console of the mini-van. Ramos knowingly possessed the .22 caliber revolver in furtherance of the drug trafficking crime of possession with intent to distribute "crack" cocaine, which is a drug trafficking crime for which Ramos may be prosecuted in a Court of the United States. Ramos' possession of the .22 caliber revolver in furtherance of his drug trafficking crime occurred in the Waco Division of the Western District of Texas.

Further, on July 11, 2008, the RG, Model 14, .22 caliber revolver that Ramos possessed had previously moved in commerce and effected commerce in that the .22 revolver was manufactured outside the State of Texas. The .22 caliber revolver was examined by Ryan Taylor, of the Bureau of Alcohol, Tobacco, Firearms and Explosives, and is a firearm as defined by federal law.

> Prior to possessing the .22 caliber revolver, Ramos had been convicted of at least one crime, punishable by imprisonment for a term exceeding one year, to-wit a felony as alleged in the Superseding Indictment.
>
> On or about October 21, 2008, Ramos was arrested on outstanding warrants by officers of the Waco Police Department and the United States Marshal's Office. At the time of the arrest, Ramos was taken out of a car and a crack pipe containing a rock of crack cocaine fell from the Ramos' lap. An immediate search of the vehicle also resulted in the location of a Rarohm .22 caliber revolver containing six live rounds in the floorboard underneath a blue towel. The arrest occurred in the Waco Division of the Western District of Texas.

See Doc. 25 at 3-4.

2. <u>Plea Proceeding</u>

On January 29, 2009, a Rearraignment Hearing was held before Judge Jeffrey C. Manske. See Doc. 28. Ramos pleaded guilty to Counts 1s through 4s of the Superseding Indictment. *Id.* In exchange of his guilty plea, the government recommended a 3-level reduction for his acceptance of responsibility, pursuant to USSG §§ 3E1.1(a) and (b).

3. <u>Sentencing Proceeding</u>

On April 8, 2009, a Sentencing Hearing was held before Judge Walter S. Smith. See Doc. 37. The Court sentenced Ramos to 240 months as to Count 1s, 60 months as to Count 2s, to be served consecutively, with the terms imposed in Counts 1s, 3s, and 4s; 120 months as to Counts 3s and 4s, to be served concurrently to the

terms imposed in Count 1s and 4s; for a total term of 300 months' imprisonment. See Doc. 38. It is followed by 3 years' Supervised Release as to each Counts 1s and 3s, 4 years as to Count4s, and 5 years as to Count 2s, with all terms imposed to be served concurrently with each other, for a total term of 5 years of Supervised Release. *Id.* The Court also ordered payment of a $4,000 Fine and a $400 Mandatory Special Assessment Fee. *Id.* On April 17, 2009, Ramos timely filed a Notice of Appeal. See Doc. 39.

4. <u>Appellate Proceeding</u>

On Appeal, Ramos raised two issues:

i. Improper Use of Prior Convictions for Career Offender Enhancement:

Ramos challenged the use of his two prior Texas convictions for Evading–Police in a Motor Vehicle as predicates for the career offender enhancement under USSG § 4B1.1. Although this Court's precedent in *United States v. Harrimon*, 568 F.3d 531 (5th Cir. 2009), foreclosed this argument, but Ramos saught to preserve it for en banc or Supreme Court review.

He argued that *Harrimon*'s classification of Texas evading offenses as "crimes of violence" under the residual clause conflicts with other circuits. For example, the Eleventh Circuit in *Harrison*, 558 F.3d 1280 (11th Cir. 2009), held that a similar

Florida offense involves minimal risk of violence, typically lacking reckless or high-speed conduct likely to cause serious injury. The statistical basis for Harrimon's finding was flawed, relying on inconsistent definitions and comparing evading offenses to inherently more dangerous crimes like arson, which are underreported. Thus, no sound legal or empirical support justifies categorizing Texas evading as a violent crime, making the District Court's ruling erroneous.

ii. Unreasonable Sentence Due to Mental Health Considerations:

In this issue, Ramos contended his sentence was both procedurally and substantively unreasonable. He submitted evidence of severe, chronic depression dating back to 1996, with psychiatric records indicating substance use for self-medication. The District Court did not explicitly consider these mental health issues in imposing the maximum sentence. As emphasized in *United States v. Mondragon-Santiago*, 564 F.3d 357 (5th Cir. 2009), district courts must address nonfrivolous sentencing arguments on the record. The court's failure to do so warrants a remand for resentencing.

On June 11, 2010, the Fifth Circuit affirmed the judgment of the district court. See Doc. 49.

5. Postconviction Proceeding

On June 8, 2016, Ramos filed a § 2255 Motion. See Doc. 52. In this motion, Ramose challenged his Career Offender enhancement based on *Johnson v. United States*, 135 S. Ct. 2551 (2015).

On July 6, 2017, the district court denied Ramos' § 2255 Motion. See Docs. 58, 59. In its Order, the district court held that because Ramos was sentenced under the United States Sentencing Guidelines and was not sentenced under the Armed Career Criminal Act, pursuant to *Beckles v. United States*, 137 S. Ct. 886 (2017), the Guidelines are not subject to vagueness challenges under the Due Process Clause. Ramos did not appeal the Court's Order.

## III. DISCUSSION

As a preliminary matter, Ramos respectfully requests that this Court be mindful that courts have a duty to construe *pro se* motions liberally. See *United States v. Kayode*, 777 F.3d 719 (5th Cir. 2014) ; *Estelle v. Gamble*, 429 U.S. 97 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519 (1972) (same).

### A. Federal Courts Have the Jurisdiction and Power to Reduce An Existing Sentence

This Court has the power to adjust Ramos's sentence. District courts no longer need a motion from the Bureau of Prisons to resentence a federal prisoner under the

compassionate release provisions of 18 U.S.C. §3582(c)(1)(A)(i). A district court may now resentence if the inmate files a motion after exhausting administrative remedies. The reasons that can justify resentencing are not limited to medical, age, or family circumstances. A district court may resentence if the inmate demonstrates extraordinary and compelling reasons for a sentence reduction. Such reasons are present in this case.

1. Historical Framework

Congress first enacted the compassionate release provisions in 18 U.S.C. §3582 as part of the Comprehensive Crime Control Act of 1984. That legislation provided that a district court could modify a final term of imprisonment when extraordinary and compelling reasons warrant such a reduction. 18 U.S.C. §3582(c)(1)(A)(i). In 1984, this provision was conditioned on the Bureau of Prisons (BOP) filing a motion in the sentencing court. Absent a motion by the BOP, a sentencing court had no jurisdiction to modify an inmate's sentence. Congress did not define what constitutes an "extraordinary and compelling reason," but the legislative history recognized that the statute was intended, in part, to abolish and replace federal parole. Rather than have the parole board review for rehabilitation only, Congress authorized review for changed circumstances:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term on imprisonment. S. Rep. No. 98-225 at 55-56 (1983).

18 U.S.C. § 3582 acts as a "safety valve" for the "modification of sentences" that would previously have been addressed through the former parole system. *Id.* at 121. The provision was intended "to assure the availability of specific review and reduction of a term of imprisonment for "extraordinary and compelling reasons" and [would allow courts] to respond to changes in the guidelines." *Id.* Thus, sentencing courts have the power to modify sentences for extraordinary and compelling reasons.

2. <u>Section 3582(c)(1)(A) is Not Limited To Medical, Elderly or Childcare Circumstances</u>

Congress initially delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the United States Sentencing Commission. 28 U.S.C. § 994(t) ("The Commission...shall describe what should be considered "extraordinary and compelling reasons" for sentence reduction, including the criteria to be applied and a list of specific examples." Congress provided one limitation to that authority: "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Rehabilitation could,

however, be considered with other reasons to justify a reduction.

Pursuant to section 994(p) of title 28, United States Code, the United States Sentencing Commission hereby submits to the Congress the following amendments to the Guidelines Manual and the reasons therefor. As authorized by such section, the Commission specifies an effective date of November 1, 2023, for these amendments:

(b) *Extraordinary and Compelling Reasons.*– Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) *Medical Circumstance of the Defendant.*–

(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.

(B) The defendant is—

(i) suffering from a serious physical or medical condition,
(ii) suffering from a serious functional or cognitive impairment, or
(iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances—

(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

(2) *Age of the Defendant.*— The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(3) *Family Circumstances of the Defendant.*—

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

(4) *Victim of Abuse.*—The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

(A) sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

(B) physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1 (Application Instructions); that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the

defendant. For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

(5) *Other Reasons.*— The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) *Unusually Long Sentence.*— If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

This amendment responds to, among other things, the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239, which amended 18 U.S.C. § 3582(c)(1)(A) to authorize courts to grant a motion for a sentence reduction upon a defendant's own motion. Previously, a court was authorized to do so only upon the motion of the Director of the Bureau of Prisons ("BOP"). Congress amended the law for the express purpose, set forth on the face of

the enactment, of "increasing the use" of sentence reduction motions under section 3582(c)(1)(A). First Step Act § 603(b).

3. <u>The First Step Act</u>

The First Step Act, P.L. 115-391, 132 Stat. 5194, at (Dec. 21, 2018), among other things, transformed the process for compassionate release. *Id.* at § 603. Now, instead of depending upon the BOP to determine an inmate's eligibility for extraordinary and compelling reasons and the filing of a motion by the BOP, a court can resentence "upon motion of the defendant." A defendant can file an appropriate motion if the he or she has exhausted all administrative remedies or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. §3582(c)(1)(A). The purpose and effect of this provision is to give federal courts the ability to hear and resentence a defendant even in the absence of a BOP motion. Congress labeled this change "Increasing the Use and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358 (2018). Senator Cardin noted in the record that the bill "expands compassionate release under the Second Chance Act and expedites compassionate release applications." 164 Cong. R. 199 at S7774 (Dec. 18, 2018). In the House, Representative Nadler noted that the First Step Act includes "a number of very positive changes, such as … improving application of compassionate release, and

providing other measures to improve the welfare of federal inmates." 164 Cong. R. H10346-04 (Dec. 20, 2018).

Once an inmate has pursued administrative remedies through the BOP, upon his or her motion, the sentencing court has jurisdiction and the authority to reduce a sentence if it finds "extraordinary and compelling reasons" to warrant a reduction. Judicial authority is no longer limited to cases that have the approval of the BOP.

4. Ramos Has Exhausted Administrative Remedies

A motion by an inmate can be filed in the district court after (1) the inmate has made the request to the Warden, and (2) either the request was denied or 30 days have lapsed from the receipt of the request, whichever is sooner. First Step Act of 2018, section 803(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).

On July 9, 2025, Ramos has filed a request for compassionate release to M. Starr, Warden at USP Hazelton, however his motion was denied on July 28, 2025. See Exhibit 1. Because 30 days have lapsed from the receipt of the request and the BOP failed to file a motion on Ramos's behalf, exhaustion of administrative remedies is not an issue in this case. See 18 U.S.C. § 3582(c)(1)(A).

**B. Ramos Has "Extraordinary and Compelling Reasons" For Compassionate Release**

Section 3582(c) states that a district court cannot modify a term of imprisonment once it has been imposed except that, in any case:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A).

In this case, there are at least six extraordinary and compelling reasons warranting such a reduction, discussed as follows:

1. <u>The First Step Act of 2018</u>

The Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act or First Step Act reforms the federal prison system of the United States of America, and seeks to reduce recidivism. The act was signed by President Donald Trump on December 21, 2018, before the end of the 115th Congress. The act, among many provisions, retroactively applies the Fair Sentencing Act, allows for employees to store their firearms securely at federal prisons, restricts the use of restraints on pregnant women, expands compassionate release for terminally ill patients, places prisoners closer to family in some cases, authorizes new markets for

Federal Prison Industries, mandates de-escalation training for correctional officers and employees, and improves feminine hygiene in prison.

i. The Changes to the Statutory Penalties for Crack Cocaine offenses under 21 U.S.C. § 841.

The Anti-Drug Abuse Act of 1986 imposed especially harsh statutory penalties for drug offenses involving crack cocaine. 100 Stat. 3207. Due to that act, section 841(b) to United States Code Title 21 provided, as of 1996, for three tiers of penalties for offenders convicted of distributing or conspiring to distribute crack cocaine in violation of 21 U.S.C. § 841(a) or 846. Specifically:

- Section 841(b)(1)(C) provided for a sentencing range of up to 20 years if the offense involved less than 5 grams or an unspecified amount of crack cocaine, with possible enhancement to up to 30 years with a prior felony drug conviction;

- Section 841 (b)(1)(B)(iii) provided for a sentencing range of 5 to 40 years if the offense involved "5 grams or more" but less than 50 grams of crack cocaine, with possible enhancement to 10 years to life with a prior felony drug conviction; and

- Section 841(b)(1)(A)(iii) provided for a sentencing range of 10 years to life if the offense involved "50 grams or more" of crack cocaine, with possible enhancement to 20 years to life with a prior felony drug conviction, or mandatory life with two prior felony drug convictions.

21 U.S.C. §§ 841(b), 851 (1996).

On August 3, 2010, Congress enacted the Fair Sentencing Act of 2010 (the "FSA"). 124 Stat. 2372. It did so because the Sentencing Commission and public had long concluded that the 1986 Anti-Drug Abuse Act's penalty scheme for crack-cocaine offenses was far too harsh and also had a disparate impact on African-American defendants. See *Dorsey v. United States*, 567 U.S. 26.0, 268-69 (2012). Specifically, section 2 of the FSA changed the penalty structure for crack offenses, as follows:

- Section 841(b)(1)(C) now provides for a sentencing range of up to 20 years if the offense involved less than 28 grams or an unspecified amount of crack cocaine, with possible enhancement to up to 30 years with a prior felony drug conviction;

- Section 841(b)(1)(B)(iii) now provides for a sentencing range of 5 to 40 years if the offense involved "28 grams or more" but less than 280 grams of crack cocaine, with possible enhancement to 10 years to life with a prior felony drug conviction; and,

- Section 841(b)(1)(A)(iii) now provides for a sentencing range of 10 years to life if the offense involved "280 grams or more" of crack cocaine, with possible enhancement to 20 years to life with a prior felony drug conviction, or mandatory life with two prior felony drug convictions.

21 U.S.C. §§ 841(b), 851 (2018); see *Dorsey*, 567 U.S. at 269 (explaining effect of Section 2 of the FSA).

The FSA went into effect immediately (August 3, 2010), and, partly to more thoroughly put an end to the "disproportionate status quo," the Supreme Court held

that the new penalty structure would apply to any defendant sentenced after August 3, 2010, even if the offense was committed prior to that date. *Dorsey*, 567 U.S. at 278.

Still, this remedy to the disproportionate status quo fell far short since it left intact many unjust sentences that were imposed prior to August 3, 2010 under the pre-FSA penalty structure. The First Step Act of 2018, enacted on December 21, 2018, has now created a freestanding remedy to retroactively reduce sentences of this type, and to provide a more just sentencing scheme upon all those convicted of crack cocaine offenses.

In *United States v. Hicks*, 137 S.Ct. 2000 (2017), Marcus Deshaw Hicks was arrested on April 8, 2010, and a search of the car in which he was arrested revealed approximately 80 grams of crack cocaine. He pleaded guilty to conspiring to possess with intent to distribute 50 or more grams of a mixture containing crack cocaine, and on June 29, 2011, he was sentenced to 20 years in prison and 10 years of supervised release. At the time Hicks was arrested, the mandatory minimum prison sentence for his crime was pegged at 20 years. However, on August 3, 2010—after Hicks' offense conduct, but before he was sentenced—the Fair Sentencing Act took effect. See Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372. The Fair Sentencing Act increased the drug amounts triggering mandatory minimum sentences for federal crack trafficking offenses. Had it applied to Hicks, the Fair Sentencing Act would

have reduced his applicable minimum sentence to 10 years of imprisonment. Hicks was sentenced subject to an improper mandatory minimum, and "experience surely teaches that a defendant entitled to a sentence consistent with 18 U.S.C. § 3553(a)'s parsimony provision, rather than pursuant to the rigors of a statutory mandatory minimum, will often receive a much lower sentence." *Hicks v. United States*, 137 S. Ct. 2000, 2001 (2017) (Gorsuch, J., concurring). Finally, this error affects the fairness, integrity, and public reputation of judicial proceedings. Indeed, during Hicks' sentencing, the government itself acknowledged that "[i]f the Supreme Court ultimately says that [the Fair Sentencing Act] should be retroactive to conduct that occurred like for this, before August 2010, then I can guarantee that all of those cases are going to be resentenced. Every single one." To do otherwise, and to fail to correct a mistake all parties concede is obvious, would be to compromise the fairness, integrity, and public reputation of the courts. In light of the foregoing, Hicks' appeal was vacated and remanded for resentencing under the Fair Sentencing Act.

ii. <u>Ramos is Eligible for a Reduced Sentence under Section 404 of the First Step Act.</u>

Section 404 of the First Step Act permits courts to impose reduced sentences on any prisoner still serving a sentence for a crack-cocaine offense if that sentence was imposed when the pre-FSA penalty structure still applied. The Act establishes

its remedy in two steps, and it clearly applies to Johnson at each step.

First, the Act defines what offenses are covered by its remedy:

> Definition of Covered Offense: In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 11 1220; 124 Stat. 2372), that was committed before August 3, 2010.

See First Step Act, Title IV, Sec. 404(a); see also Fair Sentencing Act. Johnson's drug offense is a "covered offenses" because Section 2 of the FSA "modified" the "statutory penalties" under § 841(b) for "violation[s]" of 21 U.S.C. §§ 841(a) and 846 that involved crack cocaine. Ramos' offense involved crack cocaine, and committed the violation before August 3, 2010.

Second, the Act provides the circumstances under which a district court can reduce the sentence for defendants who were previously sentenced for a "covered offense":

> Defendants Previously Sentenced: A court that imposed a sentence for a covered offense may, on motion of the defendant, . . . impose a reduced sentence as if Sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 11 1-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

*Id.*, Section 404(b). This provision plainly applies to Johnson because this Court previously "imposed a sentence" on him "for a covered offense." Through this motion, he now moves for a reduced sentence under Section 404(b) of the First Step

Act and in accordance with the FSA's reduced statutory penalties.

Third, the Act provides narrow limitations on this sentencing reduction power. The Act delineates that a court shall not entertain a motion made under Section 404 of the First Step Act to reduce a sentence "if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010," or "if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits." *Id.*, Sec. 404(b). Neither of these limitations apply to Ramos, and he is currently serving a sentence of 300 months under the pre-FSA statutory penalty structure for a crack cocaine offense, and Ramos was never granted relief pursuant to Section 404.

In summation, proving eligibility under the First Step Act is straightforward. A defendant is eligible if he was convicted of a crack cocaine offense, was sentenced when the pre-FSA statutory penalties were still in effect, and continues to serve a sentence that has not already been reduced to the post-FSA statutory penalties. Because Ramos satisfies all of these requirements, the Court has the authority to impose a reduced sentence for his crack cocaine conviction.

iii. The Court Should Order a Hearing for Ramos to Impose a Reduced Sentence

The only guidance Congress has given regarding the authorized extent of Section 404 relief is that the district court may impose a reduced sentence "as if" the FSA's reduced crack cocaine penalties "were in effect at the time the covered offense was committed." This broad grant of resentencing authority contains one implied limitation, that the court cannot impose a sentence lower than the statutory mandatory minimum applicable under the FSA — the current statutory penalties. For example, if a defendant was convicted at trial in 2009 where the jury found he distributed "50 grams or more" of crack cocaine, his post-FSA mandatory minimum sentence would be five years, because that is the post-FSA minimum for an offense involving 28 grams or more but less than 280 grams of crack. 21 U.S.C. § 841(b)(1)(B)(iii). In that case, the district court, acting pursuant to Section 404, could not reduce the defendant's sentence below five years.

Finally, Section 404 of the First Step Act makes the changes brought about by the Fair Sentencing Act of 2010 fully retroactive. As the U.S. Sentencing Commission's "2015 Report to Congress: Impact of the Fair Sentencing Act of 2010," explained: "The Fair Sentencing Act of 2010 (FSA), enacted August 3, 2010, reduced the statutory penalties for crack cocaine offenses to produce an 18-to-1

crack-to-powder drug quantity ratio. The FSA eliminated the mandatory minimum sentence for simple possession of crack cocaine and increased statutory fines."

Ramos was convicted and sentenced under 21 U.S.C. § 841(b)(1)(C) for a crack cocaine offense in 2009. In *Terry v. United States*, the Supreme Court held that § 841(b)(1)(C) offenses are not "covered offenses" under § 404 of the First Step Act because the Fair Sentencing Act did not modify the statutory penalties for that subsection. 593 U.S. 486, 492–94 (2021). As a result, Ramos is categorically excluded from retroactive relief under § 404 despite having received a twenty-year sentence for crack cocaine conduct sentenced prior to 2010. The *Terry* Court expressly recognized this inequity, noting that such defendants received "no benefit" from Congress' efforts to reduce crack-powder disparities. *Id.* at 499 (Sotomayor, J., concurring). Prior to the Fair Sentencing Act, § 841(b)(1)(C) applied only to crack cocaine offenses involving less than five grams or an unspecified amount of crack cocaine. After Congress acknowledged that the 100:1 crack-powder disparity was unjustified, it raised the quantity threshold for § 841(b)(1)(C) to less than twenty-eight grams. Although the statutory maximum penalty remained unchanged, the Fair Sentencing Act substantially altered the scope of conduct governed by § 841(b)(1)(C), confirming that pre-2010 sentences were imposed under a markedly harsher quantity framework than Congress now deems appropriate. That

acknowledged disparity, combined with Ramos' unusually severe sentence, supports relief under 18 U.S.C. § 3582(c)(1)(A). At such a hearing, all the relevant statutory sentencing factors under 18 U.S.C. § 3553(a) will be addressed in order to achieve a sentence that his sufficient but not greater than necessary.

2. Erroneous Application Career Offender Enhancement

In this case, the District Court erred in determining that Ramos was a career offender within the meaning of U.S.S.G. § 4B1.1(a), which provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Ramos was over 18 years of age when he committed this offense, and it was a "controlled substance" offense within the meaning of U.S.S.G. § 4B1.1(a). His sentence was therefore subject to being enhanced under the "Career Offender" Guidelines provision, § 4B1.1, if he had "at least two prior felony convictions of either a controlled substance offense or a crime of violence. "The PSR construed U.S.S.G. § 4B1.2, which defines a "controlled substance offense" and a "crime of violence."

Ramos was sentenced as a career offender because before he was convicted in federal court of the present offense, Ramos had at least three prior felony convictions of either a crime of violence or a controlled substance offense, enumerated as follows:

(1) On December 5, 2001: Burglary of a Habitation (Cause Number 2001-637-C) in the 54th Judicial District Court of McLennan County, Texas;
(2) On June 26, 2003: Evading Arrest With Vehicle (Cause Number 2003-691-C471) in the 54th Judicial District of McLennan County, Texas; and
(3) On January 20, 2005: Evading Arrest With a Vehicle ( Cause Number 2004-1228-C) in the 54th Judicial District Court of McLennan County, Texas.

Here, Ramos contests that he had at least three felony convictions of either a crime of violence or a controlled substance offense, explained as follows:

*Burglary of a Habitation*

The categorical approach requires comparing the statute of conviction with the "generic" definition of burglary. In *Taylor v. United States*, "generic burglary" is defined as unlawful entry into a building or structure with intent to commit a crime therein. A statute is overbroad if it criminalizes conduct outside this definition, regardless of the facts of the prior case.

Texas Penal Code § 30.02 criminalizes entry into buildings, habitations, vehicles adapted for overnight accommodation, and watercraft.

of physical injury to another."

The court ultimately upheld the enhancement solely on the residual clause, making clear that the offense did not inherently involve violence.

Following *Harrimon*, the Supreme Court in *Johnson v. United States*, 576 U.S. 591 (2015), struck down the residual clause of the Armed Career Criminal Act (ACCA) as unconstitutionally vague, reasoning that it provided no principled way for judges to determine what offenses qualify.

Later, in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), the Court extended *Johnson*'s reasoning to the residual clause in the immigration context, holding that any statute defining "crime of violence" based on a similar residual standard is likewise void for vagueness.

Because Ramos' enhancement relied exclusively on the residual clause to classify evading arrest in a vehicle as a crime of violence, the legal foundation for the enhancement no longer exists.

Furthermore, under the categorical approach mandated by *Taylor v. United States* and applied in *Harrimon*, courts determine whether a prior conviction counts as a crime of violence by comparing the elements of the statute (not the facts of the case) to the generic definition of a violent crime.

Evading arrest in a motor vehicle can be committed without threatening or using force; it is not an enumerated violent offense and it therefore fails the categorical test for a career-offender predicate.

As a result, Ramos' prior evading-arrest conviction cannot be treated as a crime of violence, any career offender enhancement based on this conviction is legally invalid, removing this enhancement significantly reduces his offense level and criminal history category, and materially lowers his guideline range.

When considered alongside other legal errors—such as the now-invalid burglary enhancement and the pre-Fair Sentencing Act 100:1 crack-cocaine disparity—this error further demonstrates that Ramos' sentence was unusually long and improperly calculated.

Finally, the Fifth Circuit in *Harrimon* made clear that evading arrest in a motor vehicle relies entirely on the residual clause to qualify as a crime of violence. Because the residual clause is now void after *Johnson* and *Dimaya*, Ramos' conviction cannot serve as a predicate offense for career offender status. Any enhancement based on this conviction is therefore legally erroneous and supports a reduction of his sentence to a guideline range consistent with powder-cocaine parity, or alternatively, time served.

3. Drug Weight Calculation

Here, Ramos urges the Court to assess *United States v. Stanback*, 377 F. Supp. 3d 618 (W.D. Va. 2019). In *Stanback*, Kelly George Stanback, represented by counsel, filed a motion to reduce his sentence pursuant to Section 404(b) of the First Step Act of 2018. ECF No. 1449. He asks the court to reduce his current sentence of 248 months to time served. The government asserts that Stanback is ineligible for consideration of a reduction in his sentence, and in the alternative, that if he is eligible for consideration, a further reduction of his sentence is not warranted. The government suggests that the only relief to which Stanback is entitled is a reduction in his term of supervised release from 5 years to 4 years. For the reasons set forth below, the court granted Stanback's request and modified his sentence to time served, to be followed by a 4-year term of supervised release.

The drug weight is an element of the offense and that any fact that increases a mandatory minimum penalty is an element that must be charged in an indictment and proved to a jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Under those two cases, if Stanback were sentenced today, his sentence would be based on distributing 5 grams or more of cocaine base, and not 3,000 kg to 10,000 kg of Marijuana equivalent.

In *Apprendi*, the Supreme Court held that the Sixth Amendment to the Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. In *Alleyne*, the Court applied *Apprendi* to the federal mandatory minimum and maximum sentencing scheme and held that because mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an element of the crime that must be submitted to the jury. *Id.* at 116, 133 S.Ct. 2151 (overruling *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) ).

Neither *Apprendi* nor *Alleyne* are retroactively applicable on collateral review. See *United States v. Sanders*, 247 F.3d 139, 146 (4th Cir. 2001) (joining other circuits in finding that *Apprendi* does not apply retroactively to cases on collateral review); and *United States v. Stewart*, 540 Fed.Appx. 171 (4th Cir. 2013) (*per curiam*) (noting that *Alleyne* has not been made retroactively applicable to cases on collateral review). However, for a period of time after *Apprendi* was decided, including before passage of the Fair Sentencing Act in 2010, the jury ordinarily made a finding regarding the threshold penalty, but the court could and did impose statutory-minimum penalties regardless of any jury finding. That practice was authorized by *Harris*, and *Alleyne* did not overrule *Harris* until three years later, and three years after the Fair

- 42 years old, obesity and former smoker
- The Court recognizes that Mr. Bilyou has served only about 56% of his sentence. However, when considering a motion for sentence reduction under the First Step Act, a court can consider "new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct."
- Bilyou has maintained a near-perfect discipline record over his more than 9 years of incarceration and has taken substantial steps to rehabilitate himself while incarcerated.

<u>*United States v. Clark*, Case No. 11-CR-30-2-JPS (E.D. Wis. Jul. 23, 2020)</u>

- Quoting that in *Redd*, the Court evaluated whether extraordinary and compelling reasons existed to reduce the sentence by considering (1) the sentence the defendant originally received compared to the one he would receive today; (2) the disparity between those sentences; and (3) the reason for that disparity. *Redd*, 2020 WL 1248493, at *5. There, the court determined that the disparity was "primarily the result of Congress' conclusion that sentences like [defendant's] are unfair and unnecessary." *Id.* at *6.

<u>*United States v. Brooks*, Case No. 07-cr-20047-JES-DGB (C.D. Ill. May. 15, 2020)</u>

- Quoting that in *Redd*, the district court held "a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in USSG § 1B1.13 cmt. n.1(A)-(C) and that the reasons it has determined in this case constitute extraordinary and compelling reasons warranting a sentence reduction satisfy any requirement for consistency with any applicable policy statement."

Ramos is now, in effect, to be re-sentenced today, after the passage of the First Step Act and the need to avoid unwarranted sentencing disparities is to be assessed at the time of his sentencing today relative to those comparable offenders who have

been sentenced following the passage of the First Step Act. Nor does the First Step Act's lack of retroactivity justify withholding sentencing relief given the overall purpose of the First Step Act amendments, which expressly allowed for the possibility for a sentence reduction based on an individualized assessment of the § 3553(a) factors and other criteria.

See e.g., *United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006) (recognizing that "a district court may consider disparities among co-defendants in determining a sentence"); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) ("Although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so."); *United States v. Gomez*, 215 F. App'x 200, 202 (4th Cir. 2007) (implying that consideration of co-defendant disparities is allowed, but concluding that Gomez was not similarly situated to the co-defendant); *United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) ("[A]voiding unwarranted sentencing disparities among co-defendants is a valid sentencing consideration."), cert. denied, 11-9109, 2012 WL 733887 (Apr. 2, 2012); *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) ("A district judge, however, may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence."); *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ("Pulley properly contends that § 3553(a)(6) does not allow unwarranted

sentencing disparities between co-defendants." (citing *Statham*, 581 F.3d at 556; *Bartlett*, 567 F.3d at 908–09)); *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) (invalidating a sentence that resulted in unwarranted disparities between the sentences of the defendant and less culpable members of related conspiracies); *United States v. Saeteurn*, 504 F.3d 1175, 1181–83 (9th Cir. 2007) (upholding as a legitimate generalized § 3553(a) consideration the district court's decision to compare defendant with his co-defendants and sentence him in accordance with his role); *United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ("[A] district court may also properly account for unwarranted disparities between codefendants who are similarly situated, and...the district court may compare defendants when deciding a sentence."); *United States v. Zavala*, 300 F. App'x 792, 795 (11th Cir. 2008) ("It is not erroneous for the district court to have considered the 'unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' when the statute specifically mandates such consideration."); *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (considering and rejecting an argument that a disparity between co-defendants' sentences was unwarranted), cert. denied, 131 S. Ct. 586 (2010).

5. First Step Act— Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A)

This motion is brought pursuant to the First Step Act of 2018, Pub. L. No. 115-391 (Dec. 21, 2018) ("First Step Act"), which fundamentally expanded the availability of compassionate release. Most significantly, the Act amended 18 U.S.C. § 3582(c)(1)(A) to allow incarcerated individuals to file motions for sentence reductions directly with the Court, thereby eliminating the Bureau of Prisons' exclusive gatekeeping role and reflecting Congress' clear intent to broaden judicial discretion in identifying "extraordinary and compelling reasons" warranting relief.

The Fifth Circuit has squarely held that, following the First Step Act, district courts are not constrained by the pre-Act policy statement found in U.S.S.G. § 1B1.13 when addressing defendant-filed motions. *United States v. Shkambi*, 993 F.3d 388, 392–93 (5th Cir. 2021). Instead, courts possess independent authority to determine what constitutes extraordinary and compelling reasons, guided—but not limited—by the Sentencing Commission's policy statements. *Id.* This discretion permits courts to consider a broad range of individualized circumstances, including the length of the sentence imposed and post-sentencing legal developments.

Beyond expanding access to compassionate release, the First Step Act enacted sweeping sentencing reforms that reflect Congress's determination that excessively

long sentences imposed under prior regimes may warrant reconsideration. These reforms include reductions to certain enhancements under 21 U.S.C. § 851, expansion of the safety-valve provision under 18 U.S.C. § 3553(f), limitations on the stacking of mandatory minimums under 18 U.S.C. § 924(c), and retroactive application of the Fair Sentencing Act of 2010. Collectively, these changes underscore a legislative shift away from the punitive sentencing practices that produced life and near-life terms for nonviolent offenses.

Consistent with this statutory evolution, the Sentencing Commission's recent amendments to U.S.S.G. § 1B1.13 expressly recognize that "Unusually Long Sentences" may constitute extraordinary and compelling reasons for relief. Under § 1B1.13(b)(6), a defendant who has served at least ten years of an unusually long sentence may establish extraordinary and compelling reasons where subsequent changes in the law—other than non-retroactive guideline amendments—would create a gross disparity between the sentence imposed and the sentence likely to be imposed today, following individualized consideration of the defendant's circumstances.

The Fifth Circuit has acknowledged that courts may consider the full slate of circumstances bearing on whether extraordinary and compelling reasons exist, including sentencing outcomes that appear unduly harsh under current law. *United States v. Cooper*, 996 F.3d 283, 288 (5th Cir. 2021). More recently, the Fifth Circuit

confirmed that sentencing disparities and evolving sentencing norms may properly inform the compassionate-release analysis. *United States v. Jean*, 93 F.4th 355, 361–62 (5th Cir. 2024).

Persuasive authority from other circuits reinforces this conclusion. Courts have recognized that the length of a sentence, combined with changes in the legal landscape, may itself constitute an extraordinary and compelling reason for relief. See *United States v. McCoy*, 981 F.3d 271, 285–87 (4th Cir. 2020); *United States v. McGee*, 992 F.3d 1035, 1047–48 (10th Cir. 2021); *United States v. Chen*, 48 F.4th 1092, 1098–1100 (9th Cir. 2022). While not binding, these decisions align with the discretion recognized by the Fifth Circuit and reflect the prevailing national consensus.

Applying these principles here, Ramos has served more than fifteen years of imprisonment, far exceeding the ten-year threshold expressly contemplated by § 1B1.13(b)(6). In light of subsequent legal developments and modern sentencing practices, his sentence now stands in stark contrast to what would likely be imposed today, creating precisely the type of gross disparity the amended policy statement was designed to address. His sentence is therefore "unusually long" within the meaning of the Guidelines.

Courts have routinely granted relief in analogous circumstances where defendants served lengthy sentences that no longer comport with contemporary sentencing standards. See, e.g., *United States v. Salliey*, No. RDB-10-0298 (D. Md. Feb. 13, 2023) (granting compassionate release based on an unusually long sentence, substantial time served, and rehabilitation). As in those cases, continued incarceration here would no longer serve the interests of justice.

Finally, it bears emphasis that Ramos received a sentence far exceeding what a similarly situated defendant would receive today, further confirming that his punishment is disproportionately severe and unusually long.

Here, Ramos asserts that his sentence in 2009 is now disparate relative to Defendants being sentenced today under a different sentencing structure (after the passage of the FSA 2018). As his 2009 sentence resulted in a longer sentence, this could be deemed a miscarriage of justice.

Under 18 U.S.C. § 3582(c)(2), to modify Ramos' sentence, taking into account the advisory nature of the guidelines after *Booker* and the considerations set forth in 18 U.S.C. § 3553(a). The court should find that a sentence of time served is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law.

Accordingly, Ramos has met his burden of demonstrating extraordinary and compelling reasons warranting a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A). Thus, this motion should be granted.

## III. CONCLUSION

For the above and foregoing reasons, Ramos prays this Court would consider his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018, based upon the "extraordinary and compelling reasons" and unwarranted disparity among Defendants being sentenced today under a different sentencing structure.

Respectfully submitted,

Dated: ~~March~~ April 23, 2026.
FAR

Freddie Andrew Ramos

FREDDIE ANDREW RAMOS
REG. NO. 29540-280
USP HAZELTON
U.S. PENITENTIARY
P.O. BOX 2000
BRUCETON MILLS, WV 26525
Appearing *Pro Se*

**CERTIFICATE OF SERVICE**

FAR April 23 2026

I hereby certify that on ~~March __, 2026~~, I mailed a true and correct copy of the above and foregoing Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 was sent via U.S. Mail, postage prepaid, to Mary F. Kucera, Assistant U.S. Attorney, in the U.S. Attorney's Office, 800 Franklin, Suite 280, Waco, TX 76701.

Freddie Andrew Ramos

FREDDIE ANDREW RAMOS

FREDDIE ANDREW RAMOS
REG. NO. 29540-280
USP HAZELTON
U.S. PENITENTIARY
P.O. BOX 2000
BRUCETON MILLS, WV 26525

~~March~~ April 23, 2026
(FAR)

Clerk of Court
U.S. District Court
Western District of Texas
Waco Division
800 Franklin Ave., Room 380
Waco, Texas 76701

RE: *Ramos v. United States*
Crim No. 6:08-cr-00174-ADA-1

To the Clerk of Court:

Enclosed please find and accept for filing Movant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018. Please submit this document to the Court.

Thank you for your assistance in this matter.

Sincerely,

[signature]
FREDDIE ANDREW RAMOS
Appearing *Pro Se*

*Encl. as noted*

29540 280
Freddie Romo
United States penitentiary
Hazelton
P O BOX 2000
Bruceton Mills WV 26525

PITTSBURGH PA DC 152
FRI 01 MAY 2026 PM

Clerk of the courts
U.S. district court
Western district of Texas
Waco division
800 Franklin Ave Room 38
WACO TX 76701

RECEIVED
MAY 05 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______________________
DEPUTY CLERK