FILED
September 30, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: lad
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | No. W-08-CR-00174(1)-ADA |
| | § | |
| FREDDIE ANDREW RAMOS #29540-280 | § | |

**DEFENDANT FREDDIE ANDREW RAMOS'S MOTION FOR RECONSIDERATION OF ORDER DENYING COMPASSIONATE RELEASE OR, IN THE ALTERNATIVE, RENEWED MOTION FOR REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

COMES Defendant Freddie Andrew Ramos, proceeding *pro se*, respectfully moves this Court to reconsider its July 21, 2026 Order denying his motion for compassionate release and, in the alternative, renews his request for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). In support of this motion, Ramos would state as follows:

**INTRODUCTION**

The present motion arises under unusual circumstances. Ramos did not receive the Court's July 21, 2026 Order and did not know that his motion for compassionate release had been denied. He first learned of the ruling on September 22, 2026, when his brother, who has access to PACER, informed him that an Order denying relief had been entered on the docket. Until then, Ramos had never seen the Order and had no reason to know that any further filing was required. He now acts promptly upon receiving actual notice of the Court's ruling.

The Court denied Ramos's prior motion after concluding that he had not established extraordinary and compelling reasons for a sentence reduction and that the sentencing factors set forth in 18 U.S.C. § 3553(a) did not support relief. The Court further concluded that, to the extent Ramos challenged the legality of his sentence, such claims must be pursued through 28 U.S.C. §

2255 rather than through § 3582(c)(1)(A).

Ramos does not ask this Court to disregard that distinction. Nor does he seek to employ compassionate release as a substitute for collateral review. Rather, he respectfully asks the Court to reconsider the denial on the existing record, with the Government's previously unanswered arguments addressed, and, alternatively, to consider his present circumstances under § 3582(c)(1)(A) without treating the motion as an attack upon the validity of his conviction or sentence.

That distinction is particularly important in light of the Supreme Court's recent decisions in *Fernandez v. United States* and *Rutherford v. United States*. Those decisions limit the extent to which a defendant may rely upon alleged sentencing invalidity or nonretroactive changes in law as the basis for compassionate release. Ramos therefore does not rest this motion upon a request that the Court invalidate his sentence through § 3582(c)(1)(A). Instead, he asks the Court to consider whether his individualized and present circumstances, including his lengthy period of incarceration, rehabilitation, institutional conduct, treatment, release circumstances, and the sentencing factors under § 3553(a), warrant a reduction under the statute as it now stands.

Reconsideration is also appropriate because the Government's response to Ramos's original motion presented factual and legal arguments that were never answered before the Court ruled. The Government opposed relief on three independent grounds: that Ramos had not shown extraordinary and compelling reasons, that he remained a danger to the community, and that the § 3553(a) factors weighed against a reduction. Because no reply was filed, those matters were presented to the Court without a response from Ramos.

This motion is therefore not intended merely to repeat arguments the Court has already rejected. It is intended to clarify the precise basis upon which Ramos seeks relief in light of

*Fernandez*, *Rutherford*, and the Court's July 21 Order.

For these reasons, Ramos respectfully requests that the Court reconsider its prior ruling or, in the alternative, consider this filing as a renewed motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

## I. THE DELAY IN SEEKING RECONSIDERATION RESULTED FROM LACK OF NOTICE OF THE COURT'S ORDER

The Court entered its Order denying Ramos's motion for compassionate release on July 21, 2026. See ECF No. 70.[1] The Order denied relief after concluding that Ramos had not demonstrated extraordinary and compelling reasons for a sentence reduction and that the factors set forth in 18 U.S.C. § 3553(a) independently weighed against relief.

Ramos respectfully advises the Court that he did not receive the July 21, 2026 Order and was unaware that his compassionate-release motion had been denied. Accordingly, his failure to seek reconsideration immediately following entry of the Order was not a deliberate failure to pursue relief or an attempt to relitigate a matter that he knowingly allowed to become final. Ramos learned only recently that the Court had ruled upon his motion and has acted promptly upon learning of the disposition.

The absence of notice is especially significant in this proceeding because Ramos was incarcerated and proceeding *pro se*. He necessarily depended upon receipt of the Court's Order to know that a ruling had been entered and to determine what further action, if any, should be taken.

1 "ECF No." refers to the docket-entry number assigned to filings in this case on the Court's electronic docket, which is immediately followed by the docket-entry number.

Ramos recognizes that Federal Rule of Criminal Procedure 49(d) provides that a failure to receive notice of an order does not automatically enlarge the time for filing an appeal beyond the limits established by Federal Rule of Appellate Procedure 4(b). He therefore does not contend that lack of notice, standing alone, automatically renders the present motion timely under the ordinary fourteen-day period applicable to motions for reconsideration in criminal proceedings. See *United States v. McFadden*, 49 F.4th 347, 351–52 (5th Cir. 2022).

The circumstances nevertheless bear directly upon the Court's exercise of its authority to consider the present filing. Ramos did not receive the Order, did not knowingly abandon the opportunity to respond to it, and did not intentionally delay bringing the present matters to the Court's attention. Moreover, the Government's response to the original compassionate-release motion contained factual and legal matters that were never answered before the Court ruled, including matters bearing directly upon Ramos's institutional conduct, rehabilitation, dangerousness, and the § 3553(a) factors.

Accordingly, Ramos respectfully requests that the Court consider the present filing as a motion for reconsideration to the extent permitted by law and, alternatively, as a renewed motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). This alternative characterization permits the Court to consider Ramos's present circumstances on the existing record without requiring the Court to treat § 3582(c)(1)(A) as a substitute for collateral review under 28 U.S.C. § 2255.

Ramos is proceeding *pro se*, and his filings therefore should be liberally construed. See *Morrow v. FBI*, 2 F.3d 642, 643 n.2 (5th Cir. 1993); see also *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Liberal construction does not excuse compliance with applicable procedural requirements, but it does require the Court to consider the substance of the relief sought rather than

the technical form in which a pro se litigant presents it. That principle supports construing this filing, to the extent reconsideration is procedurally unavailable, as a renewed request for relief under 18 U.S.C. § 3582(c)(1)(A).

It is essential to note that Ramos is presently unable to submit a separate sworn declaration concerning his nonreceipt of the July 21 Order. He therefore makes that representation directly in this *pro se* filing and respectfully requests that the Court consider it in conjunction with the docket and the circumstances described above.

## II. PROCEDURAL BACKGROUND

On May 5, 2026, Ramos filed his motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 67. In that motion, Ramos sought a reduction of his 300-month sentence and relied upon several circumstances that he contended, individually and collectively, constituted extraordinary and compelling reasons for relief.

The Government filed its response on June 22, 2026. ECF No. 69. It opposed relief on three independent grounds. First, the Government argued that Ramos had failed to establish an extraordinary and compelling reason for a sentence reduction. Second, it contended that Ramos had failed to demonstrate that he no longer posed a danger to another person or the community. Third, it maintained that the sentencing factors set forth in 18 U.S.C. § 3553(a) continued to weigh against any reduction in sentence.

The Government also argued that, to the extent Ramos relied upon alleged errors in the application of sentencing enhancements or the legal validity of aspects of his original sentence, those matters could not properly be litigated through § 3582(c)(1)(A). According to the Government, such arguments constituted collateral attacks that must instead be pursued under 28 U.S.C. § 2255.

No reply was filed before the Court ruled. Consequently, the Government's factual and legal assertions concerning extraordinary and compelling reasons, dangerousness, institutional conduct, and the § 3553(a) factors were not answered by Ramos.

On July 21, 2026, the Court entered an Order denying the motion. ECF No. 70. The Court concluded that Ramos had not demonstrated extraordinary and compelling reasons warranting a sentence reduction. The Court further determined that Ramos was primarily challenging the legality of his sentence and held that such matters must be raised on appeal or through a motion under 28 U.S.C. § 2255 rather than through § 3582(c)(1)(A).

The Court also independently concluded that the § 3553(a) factors did not support early release. In doing so, the Court incorporated the reasoning from its May 19, 2022 Order denying Ramos's earlier request for compassionate release and determined that the nature and circumstances of the offense, Ramos's history and characteristics, the seriousness of the offense, deterrence, just punishment, and protection of the public continued to weigh against a reduction.

Ramos, however, did not receive a copy of the July 21, 2026 Order and remained unaware that his motion had been denied. He first learned of the ruling on September 22, 2026, when his brother, who has access to PACER, informed him that the Court had entered an Order denying relief. Until that time, Ramos had never seen the Order and had no actual notice that the Court had ruled upon his motion.

Ramos now acts promptly upon learning of the Court's decision. Through the present motion, he seeks reconsideration of the July 21 Order and, alternatively, renewed consideration under § 3582(c)(1)(A) on the existing record that addresses the Government's previously unanswered arguments and clarifies the basis for relief in light of the Court's ruling and the Supreme Court's

intervening guidance.

### A. Ramos Previously Presented a Compassionate-Release Request to the Bureau of Prisons.

Before filing his May 5, 2026 motion, Ramos presented a written request for compassionate release to the Bureau of Prisons. On July 9, 2025, Ramos submitted an Inmate Request to Staff seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). See Exhibit 1. The request relied principally upon subsequent changes in federal sentencing law and the resulting sentencing consequences in Ramos's case.

On July 28, 2025, the Complex Warden issued a written response expressly treating Ramos's submission as a request for compassionate release under Program Statement 5050.50 and denying that request. See **Exhibit 1** attached. Thus, Ramos presented a compassionate-release request to the Bureau of Prisons and received a written denial well before filing his May 5, 2026 motion.

To the extent the present filing is treated as a motion for reconsideration, no new administrative request is required because Ramos seeks reconsideration of the motion already presented to and decided by this Court. To the extent the Court instead construes this filing as a renewed motion under § 3582(c)(1)(A), Ramos relies upon the prior administrative request and denial with respect to the grounds previously presented. The present motion principally narrows those grounds in light of Fernandez and Rutherford and responds to the Government's factual arguments. Ramos recognizes, however, that the Court should not treat a wholly new factual basis for compassionate release as administratively exhausted merely because an earlier request was submitted on materially different grounds.

## III. RECONSIDERATION IS WARRANTED TO PERMIT THE COURT TO CONSIDER THE EXISTING RECORD UNDER THE CONTROLLING COMPASSIONATE-RELEASE FRAMEWORK

Although the Federal Rules of Criminal Procedure do not expressly provide for motions for reconsideration, federal courts recognize such motions in criminal proceedings. In the compassionate-release context, the Fifth Circuit has looked to the standards governing reconsideration under the Federal Rules of Civil Procedure. See *United States v. Garrett*, 15 F.4th 335, 339–40 (5th Cir. 2021). Under those standards, reconsideration may be appropriate where there has been an intervening change in controlling law, newly discovered evidence, or a need to correct a manifest error of law or fact. *Id.* at 340.

Ramos recognizes that reconsideration is not an opportunity merely to repeat arguments previously considered and rejected. That is not the purpose of the present motion. Rather, reconsideration is requested because the Court ruled upon an incomplete adversarial record, Ramos never received notice of the resulting Order, and the prior presentation did not adequately distinguish between arguments that are foreclosed by recent Supreme Court authority and those present-circumstance considerations that remain properly cognizable under 18 U.S.C. § 3582(c)(1)(A).

### A. *Fernandez* Precludes the Use of Compassionate Release to Collaterally Attack a Conviction or Sentence, but Does Not Eliminate Compassionate Release Based on Otherwise Legally Cognizable Present Circumstances.

In *Fernandez v. United States*, 608 U.S. 411 (2026), the Supreme Court held that § 3582(c)(1)(A) may not be employed as an alternative vehicle for challenging the validity of a federal conviction. Congress has provided 28 U.S.C. § 2255 as the mechanism for federal prisoners to collaterally attack their convictions, together with the procedural restrictions governing such review.

Permitting the same challenge to be asserted as an "extraordinary and compelling reason" for compassionate release would permit a prisoner to circumvent that statutory framework. Id. at 419–28.

Ramos accepts that limitation. To the extent his original motion could be read as asking this Court to declare his conviction or sentence legally invalid, he does not renew that request under § 3582(c)(1)(A). Any claim whose substance is that Ramos should not have been convicted, or that his sentence is legally invalid and must therefore be vacated, falls outside the proper scope of this proceeding under *Fernandez*.

But *Fernandez* does not eliminate compassionate release for defendants whose present circumstances independently warrant the exercise of sentencing discretion. Indeed, the Supreme Court expressly distinguished between a prisoner asserting that he should never have been convicted and a prisoner asserting that his present circumstances warrant compassion. See *Fernandez*, 608 U.S. at 429.

That distinction is central here. Ramos's present motion does not ask the Court to use § 3582(c)(1)(A) to adjudicate the validity of his conviction. It asks the Court to assess the circumstances that exist now—including his conduct during approximately seventeen years of incarceration, rehabilitation, treatment, institutional record, present characteristics, release plan, and the purposes of sentencing reflected in § 3553(a)—and determine whether those circumstances support a reduction within the lawful scope of § 3582(c)(1)(A).

### B. ***Rutherford* Forecloses Reliance Upon a Nonretroactive Change in Sentencing Law as an Extraordinary and Compelling Reason.**

The Supreme Court's decision in *Rutherford v. United States*, 608 U.S. 454 (2026), imposes a separate limitation. There, the Court held that a sentencing disparity resulting from Congress's deliberate decision not to make a change in sentencing law retroactive cannot constitute an extraordinary and compelling reason under § 3582(c)(1)(A). The Court further held that such a nonretroactive change cannot supply the extraordinary and compelling reason either by itself or in combination with other factors. *Id.* at 470–76. To the extent U.S.S.G. § 1B1.13(b)(6) permits otherwise, the Court held that provision invalid.

The Fifth Circuit has since applied *Rutherford* to compassionate-release claims predicated upon nonretroactive sentencing changes. See, e.g., *United States v. Thomas*, No. 25-40053, slip op. at 2 (5th Cir. July 20, 2026) (unpublished) (recognizing that *Rutherford* foreclosed reliance upon a nonretroactive change to § 924(c), whether considered alone or in combination with other circumstances).

Ramos therefore does not ask this Court to treat a nonretroactive change in sentencing law, or the disparity produced by such a change, as the extraordinary and compelling reason supporting relief. Nor does he contend that § 1B1.13(b)(6) permits the Court to do what *Rutherford* now prohibits.

The significance of *Rutherford*, however, is one of limitation rather than elimination. It removes nonretroactive sentencing changes from the extraordinary-and-compelling inquiry; it does not repeal § 3582(c)(1)(A), eliminate the remaining circumstances recognized by the applicable policy statement, or prevent a court from evaluating independent and legally permissible reasons for

compassionate release.

### C. **<u>Ramos's Request Should Be Evaluated on the Grounds That Remain Legally Cognizable After *Fernandez* and *Rutherford*.</u>**

The prior motion combined several different considerations, including changes in sentencing law, questions concerning Ramos's original sentencing treatment, his lengthy incarceration, rehabilitation, institutional conduct, medical and mental-health circumstances, and the § 3553(a) factors. In light of *Fernandez* and *Rutherford*, those matters should no longer be treated as a single undifferentiated theory.

The proper inquiry is narrower. Any contention that Ramos's conviction or sentence is legally invalid must be excluded from consideration under *Fernandez*. Any nonretroactive change in sentencing law and the disparity resulting from that change must be excluded as a basis for finding extraordinary and compelling reasons under *Rutherford*. What remains for consideration are Ramos's independent, present circumstances that fall within § 3582(c)(1)(A) and the applicable policy statement, followed by the Court's consideration of the § 3553(a) factors.

That inquiry is particularly appropriate here because the Government's response addressed Ramos's present institutional conduct and characteristics and relied upon those matters to argue dangerousness and the § 3553(a) factors. Those allegations were never answered before the Court ruled. The Court consequently did not have the benefit of an adversarial presentation concerning matters directly relevant to the permissible present-circumstances inquiry recognized by *Fernandez*.

Ramos therefore respectfully requests reconsideration not so that the Court may revive theories now foreclosed by controlling authority, but so that it may determine his request under the correct and narrowed framework: excluding collateral attacks and nonretroactive sentencing

disparities while considering those individualized present circumstances that remain properly cognizable under § 3582(c)(1)(A).

## IV. <u>LEGALLY COGNIZABLE GROUNDS FOR COMPASSIONATE RELEASE REMAIN AFTER *FERNANDEZ* AND *RUTHERFORD*</u>

Neither *Fernandez* nor *Rutherford* eliminates the compassionate-release remedy created by Congress in 18 U.S.C. § 3582(c)(1)(A). Rather, those decisions identify grounds that may not be used to establish extraordinary and compelling reasons. Fernandez prevents a defendant from using compassionate release to collaterally attack the validity of his conviction, while Rutherford prevents a defendant from relying upon a congressionally nonretroactive change in sentencing law, either standing alone or in combination with other circumstances, as the extraordinary and compelling reason for relief. *Fernandez v. United States*, 608 U.S. 411 (2026); *Rutherford v. United States*, 608 U.S. 454 (2026).

The remainder of U.S.S.G. § 1B1.13 continues to identify circumstances capable of supporting compassionate release, including qualifying medical circumstances, age-related deterioration, specified family circumstances, abuse suffered while in custody, and other circumstances or combinations of circumstances "similar in gravity" to those specifically identified in the policy statement. U.S.S.G. § 1B1.13(b)(1)–(5).

Ramos therefore narrows his request accordingly.

### A. <u>Ramos Does Not Rely Upon the Alleged Invalidity of His Career-Offender Enhancement as an Extraordinary and Compelling Reason.</u>

A substantial portion of Ramos's original motion challenged the continued validity of the predicate convictions used in calculating his career-offender status. Ramos's original motion relied

upon *Johnson v. United States*, 576 U.S. 591, 597–606 (2015), and *Sessions v. Dimaya*, 584 U.S. 148, 156–63 (2018), in challenging the residual-clause basis for treating his prior convictions as crimes of violence. Ramos argued that the legal foundation supporting the enhancement no longer existed and that the resulting guideline calculation was erroneous.

After *Fernandez*, that argument cannot serve as the extraordinary and compelling reason supporting compassionate release. If the substance of a claim is that the sentence was unlawfully imposed and therefore must be corrected, the claim falls within the collateral-review framework established by Congress rather than § 3582(c)(1)(A). See *Fernandez*, 608 U.S. at 419–28.

Ramos therefore does not ask the Court in this proceeding to adjudicate whether his career-offender designation was legally erroneous or to vacate his sentence on that basis. To the extent his original motion could be understood as requesting such relief, that theory is not renewed.

### B. <u>Ramos Likewise Does Not Rely Upon Nonretroactive Sentencing Changes or the Resulting Sentencing Disparity as the Extraordinary and Compelling Reason.</u>

Ramos's original motion also relied heavily upon subsequent changes in federal sentencing law, including changes concerning crack-cocaine penalties, the First Step Act, and the substantial disparity between his 2009 sentence and the sentence he contended would likely be imposed today. The original motion expressly characterized his sentence as "unusually long" under U.S.S.G. § 1B1.13(b)(6) and relied upon the fact that he had served more than fifteen years.

*Rutherford* now forecloses reliance upon a congressionally nonretroactive sentencing change and the disparity it creates as an extraordinary and compelling reason under § 3582(c)(1)(A), whether the disparity is considered alone or together with other factors. The Supreme Court further held that the Sentencing Commission's policy statement cannot authorize relief to the extent it conflicts with

that statutory limitation. See *Rutherford*, 608 U.S. at 470–76.

Ramos accordingly does not ask the Court to find extraordinary and compelling reasons merely because he might receive a different sentence if sentenced today. Nor does he rely upon U.S.S.G. § 1B1.13(b)(6) to circumvent *Rutherford*.

That concession materially narrows the present proceeding and removes the principal concern identified in the Court's July 21 Order—that Ramos was attempting to use compassionate release as a means of challenging his original sentence.

### C. Ramos's Present Medical and Mental-Health Circumstances Remain Legally Cognizable, Subject to an Adequate Evidentiary Showing.

The amended policy statement continues to recognize qualifying medical circumstances as extraordinary and compelling reasons. These include a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of aging that substantially diminishes the defendant's ability to provide self-care within a correctional environment and from which recovery is not expected. U.S.S.G. § 1B1.13(b)(1). The policy statement also encompasses circumstances in which a defendant requires long-term or specialized medical care that is not being provided and faces a risk of serious deterioration without that care.

Ramos's original motion identified a longstanding history of severe chronic depression dating to approximately 1996 and asserted that his substance abuse historically operated, at least in part, as a means of self-medication. The Government responded that Ramos had not demonstrated that his depression was sufficiently serious to satisfy § 1B1.13(b)(1) or that it substantially diminished his ability to provide self-care.

That response identifies an evidentiary deficiency in the original presentation; it does not establish that mental-health circumstances are legally irrelevant after *Fernandez* or *Rutherford*. A properly supported present showing concerning Ramos's diagnosis, treatment, progression, access to adequate care, functional limitations, and any relationship between his mental-health condition and his documented substance-abuse history remains within the compassionate-release framework established by § 1B1.13(b)(1).

Ramos acknowledges that the present record does not contain the type of current medical documentation that would independently establish relief under § 1B1.13(b)(1).

Accordingly, Ramos does not contend that the bare fact of a historical depression diagnosis, standing alone, establishes an extraordinary and compelling reason. Rather, he respectfully asks the Court to consider the mental-health and substance-abuse history already reflected in the record as part of the individualized circumstances relevant to the compassionate-release inquiry, while recognizing the evidentiary limitations of the present record.

### D. <u>Other Present Circumstances May Be Considered Under § 1B1.13(b)(5) If They Are Similar in Gravity to the Enumerated Grounds.</u>

Section 1B1.13(b)(5) separately provides that extraordinary and compelling reasons may exist where a defendant presents another circumstance, or combination of circumstances, that is similar in gravity to the circumstances identified in § 1B1.13(b)(1) through (4). That provision survives Rutherford. What *Rutherford* prohibits is the use of a nonretroactive change in sentencing law as the extraordinary and compelling reason; it does not invalidate the Commission's recognition that other sufficiently grave individualized circumstances may warrant relief.

The inquiry under subsection (b)(5), however, must focus upon Ramos himself and his present circumstances—not upon an asserted legal defect in the original sentence or upon a nonretroactive sentencing disparity. Relevant circumstances may include conditions of confinement or other individualized circumstances of sufficient gravity, provided that the showing satisfies the standard imposed by the policy statement.

The Court should therefore evaluate any such circumstances on their own terms and not treat Ramos's abandonment of the sentencing-law theories foreclosed by *Fernandez* and *Rutherford* as eliminating every remaining avenue for relief under § 3582(c)(1)(A).

### E. **Ramos's Rehabilitation and Lengthy Period of Incarceration Remain Relevant, Although Rehabilitation Cannot, Standing Alone, Establish an Extraordinary and Compelling Reason.**

Congress has expressly provided that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The Sentencing Commission likewise provides that rehabilitation, although insufficient standing alone, may be considered in combination with other circumstances in determining whether and to what extent a reduction is appropriate.

Ramos therefore does not contend that rehabilitation by itself entitles him to compassionate release. His conduct during the approximately seventeen years that have elapsed since his federal incarceration began is nevertheless highly relevant to the Court's present assessment of his characteristics, dangerousness, deterrence, protection of the public, and the § 3553(a) factors.

The same is true of the substantial portion of his sentence already served. Ramos may no longer rely upon the length of that sentence because a nonretroactive change in law would produce a different sentence today. But the amount of punishment already served remains relevant when the

Court determines, under § 3553(a), whether continued incarceration is necessary to achieve just punishment, adequate deterrence, and protection of the public.

Thus, the present motion rests upon a considerably narrower foundation than the original filing. Ramos does not ask the Court to invalidate his sentence, does not ask the Court to treat subsequent nonretroactive sentencing law as an extraordinary and compelling reason, and does not rely upon rehabilitation alone. He asks the Court to evaluate those present, individualized circumstances that remain legally cognizable after *Fernandez* and *Rutherford* and, if an extraordinary and compelling reason is established, to determine on the existing current record whether the purposes of sentencing require his continued incarceration.

### F. <u>The Government's Previously Unanswered Factual Arguments Warrant Reconsideration on the Existing Record</u>

The Government's concerns are serious and should not be minimized. Its response relied upon Ramos's substance-abuse history, several disciplinary incidents while incarcerated, his original offense conduct, his criminal record, and the seriousness of the conduct underlying his 300-month sentence. Those matters bear directly upon dangerousness and the § 3553(a) factors.

But those arguments were never answered before the Court ruled. Ramos therefore respectfully submits that reconsideration provides an appropriate opportunity to address what the Government's evidence does—and does not—establish.

The existing record does not permit Ramos to claim that his institutional history has been spotless. Nor does he make that claim now. The Government identified disciplinary incidents involving substance use and institutional rule violations extending through December 2024. Those incidents properly weigh in the Court's assessment. At the same time, they do not eliminate the

requirement that the Court evaluate Ramos individually and determine whether, after approximately seventeen years of federal incarceration, continued imprisonment remains necessary to satisfy the purposes identified in § 3553(a).

The Court should therefore consider the Government's factual showing together with the length of incarceration already served, Ramos's age and present circumstances, the mental-health and substance-abuse history already identified in the record, and those rehabilitative considerations previously presented to the Court. Ramos does not ask the Court to disregard unfavorable evidence. He asks only that the previously unanswered factual contentions be considered as part of the complete § 3553(a) analysis rather than treated as dispositive in isolation.

## V. THE GOVERNMENT'S PREVIOUSLY UNANSWERED FACTUAL ARGUMENTS DO NOT FORECLOSE RECONSIDERATION UNDER § 3553(a)

The Government argued that even if Ramos could establish an extraordinary and compelling reason, relief should nevertheless be denied because his institutional disciplinary history, substance-abuse history, original offense conduct, criminal record, and asserted dangerousness demonstrate that a sentence reduction would be inconsistent with the purposes of sentencing. Because Ramos did not file a reply before the Court entered its July 21, 2026 Order, those arguments were not answered.

Ramos does not minimize the matters identified by the Government. The question presented under § 3553(a), however, is not whether Ramos's past conduct was serious. It plainly was. The question is whether, considering the entire record and the substantial punishment already imposed, continued incarceration for the remainder of the original 300-month sentence remains necessary to accomplish the purposes of sentencing.

**A. The Disciplinary and Substance-Abuse Incidents Are Serious but Must Be Evaluated in Context.**

The Government relied upon a number of relatively recent BOP disciplinary incidents, including incidents involving methamphetamine, amphetamines, buprenorphine, other unauthorized drugs, tobacco, and an absence from an assigned area. According to the Government's chronology, those incidents included substance-related violations on December 14, 2023, February 11, 2024, and April 14, 2024, an assignment-related violation on July 29, 2024, and a tobacco-related incident on December 3, 2024.

Ramos does not ask the Court to disregard that history. Substance-related misconduct in prison is relevant to both institutional adjustment and the risk of recidivism. But the nature of the cited misconduct also matters. The incidents identified by the Government principally concern substance use, possession, and institutional rule violations. The chronology relied upon by the Government does not itself describe a new violent offense, an assault upon another inmate or staff member, or a new weapons offense.

That distinction does not excuse the misconduct. It does, however, bear upon what the misconduct demonstrates. Ramos's history, both before and during incarceration, reflects a longstanding substance-abuse problem. His original motion also identified chronic depression dating to approximately 1996 and described drug use as having operated, at least in part, as a form of self-medication. Against that background, the recent substance-related incidents support the need for continued substance-abuse and mental-health treatment. They do not necessarily establish that Ramos currently presents the same type or degree of danger reflected in the conduct that resulted in his federal sentence.

The Court may properly treat the disciplinary history as weighing against Ramos. But it should do so as one component of the overall inquiry, rather than as an automatic bar to relief.

**B. Ramos's Original Offense Conduct and Criminal History Are Serious, but Dangerousness Requires a Present Assessment.**

The Government also relied heavily upon the conduct underlying Ramos's federal convictions. The record reflects serious drug-trafficking and firearm conduct. In July 2008, Ramos possessed approximately 4.65 grams of crack cocaine intended for distribution, and a .22-caliber revolver was found in the vehicle. The factual basis further reflected an effort to evade law enforcement. A subsequent federal prosecution again involved firearm possession.

The Government likewise emphasized Ramos's prior criminal history, including convictions involving unlawful carrying of a weapon, driving while intoxicated, burglary of a habitation, cocaine possession, and evading arrest with a vehicle. The Court was therefore entitled to regard the original offense and Ramos's criminal history as significant considerations.

But § 3582(c)(1)(A) necessarily calls for consideration of the defendant as he exists at the time relief is sought. Ramos has now spent approximately seventeen years in federal custody. The seriousness of conduct committed in 2008 does not diminish with time, but neither does it answer by itself whether Ramos today presents an unacceptable danger that cannot be managed through supervised release, treatment requirements, drug testing, and other conditions available to the Court.

The Court may conclude that Ramos's history continues to weigh heavily against release. Ramos respectfully submits only that dangerousness should be determined from the totality of the record, including the substantial period of incarceration already served and the nature of the more recent institutional misconduct, rather than from the original offense conduct alone.

**C. Ramos's Rehabilitation Cannot Independently Establish Relief, but It Remains Relevant to the § 3553(a) Analysis.**

As discussed above, 28 U.S.C. § 994(t) prevents rehabilitation alone from constituting an extraordinary and compelling reason. That limitation does not make rehabilitation irrelevant once the Court evaluates whether a reduction would be consistent with § 3553(a).

Ramos's original motion relied upon his rehabilitative progress during incarceration. The present motion does not embellish that showing or claim accomplishments that are not established in the existing record. But the Court may properly consider the rehabilitative evidence already before it together with the length of Ramos's incarceration, his institutional history, and the substantial punishment he has already received.

The relevant question is not whether Ramos has achieved perfect institutional conduct. The Government's disciplinary evidence establishes that he has not. The question is whether the entire record nevertheless demonstrates sufficient change over a lengthy period of incarceration to justify some reduction in the sentence while still protecting the public and preserving the purposes of sentencing.

**D. The § 3553(a) Factors Should Be Reconsidered in Light of the Sentence Already Served and Ramos's Present Circumstances.**

The Court's July 21 Order incorporated its earlier assessment of the § 3553(a) factors and concluded that the seriousness of the offense, Ramos's history and characteristics, deterrence, just punishment, and protection of the public continued to weigh against relief.

Ramos does not dispute that those considerations remain important. He respectfully submits, however, that the amount of punishment already served is itself relevant when determining whether further incarceration remains necessary to satisfy those same purposes.

Ramos has served approximately seventeen years in federal custody. That represents a substantial deprivation of liberty and a significant measure of punishment for the conduct underlying this case. Recognizing that fact does not depend upon a nonretroactive change in sentencing law and therefore does not implicate the prohibition identified in Rutherford. It is instead a present circumstance bearing directly upon the statutory questions of just punishment, deterrence, and protection of the public.

The Court may also consider whether the objectives of supervised release can address the concerns emphasized by the Government. Ramos's substance-abuse history and the drug-related institutional incidents suggest that treatment, monitoring, drug testing, and structured supervision would be important components of any release. Those concerns do not necessarily require the conclusion that continued incarceration for the full remaining term is the only means of protecting the public.

Section 3582(c)(1)(A) does not require the Court to choose only between maintaining the existing sentence and reducing the sentence to time served. The statute permits the Court to reduce the term of imprisonment and impose appropriate conditions of supervised release. Section 3582(c)(1)(A) permits the Court to reduce the term of imprisonment and to impose appropriate conditions of supervised release. Thus, if the Court concludes that an immediate time-served reduction is not warranted, it retains discretion to fashion such lesser reduction and conditions as it deems sufficient but not greater than necessary to accomplish the purposes of sentencing.

Ramos therefore respectfully requests that the Court reconsider the § 3553(a) determination on the full existing record. He acknowledges the seriousness of his offense, his criminal history, and the disciplinary matters identified by the Government. But those considerations should be weighed

against the approximately seventeen years of punishment already served, the individualized circumstances presently before the Court, and the availability of stringent supervision and treatment conditions capable of addressing legitimate public-safety concerns.

## VI. RECONSIDERATION WOULD NOT CONVERT § 3582(c)(1)(A) INTO COLLATERAL REVIEW

The narrowed request presented here avoids the concern that formed a substantial part of the Court's July 21 ruling. Ramos no longer relies upon the alleged invalidity of his career-offender designation as an extraordinary and compelling reason. He likewise does not rely upon a nonretroactive change in sentencing law or the resulting sentencing disparity as a basis for relief.

The Court therefore need not decide through § 3582(c)(1)(A) whether Ramos's original sentence was legally erroneous. That question is separate from the one presented here.

The present inquiry is whether Ramos has demonstrated circumstances that remain legally cognizable under § 3582(c)(1)(A) after Fernandez and Rutherford and, if so, whether the § 3553(a) factors justify a reduction when considered on the existing record and in light of the substantial period of incarceration already served.

Considering that question would neither invalidate Ramos's original judgment nor circumvent the limitations Congress imposed upon collateral review. It would instead require the Court to exercise the sentence-modification authority Congress expressly provided in § 3582(c)(1)(A).

## CONCLUSION

For the foregoing reasons, Defendant Freddie Andrew Ramos respectfully requests that the Court reconsider its July 21, 2026 Order denying compassionate release.

Ramos recognizes that *Fernandez v. United States* and *Rutherford v. United States* materially narrow the theories upon which compassionate release may be granted. He therefore does not ask the Court to invalidate his original sentence, to adjudicate the legality of his career-offender designation through § 3582(c)(1)(A), or to treat a nonretroactive change in sentencing law as an extraordinary and compelling reason.

Instead, Ramos respectfully asks the Court to reconsider the grounds that remain legally available, together with the Government's previously unanswered factual arguments and the sentencing factors set forth in 18 U.S.C. § 3553(a). In doing so, the Court should consider the seriousness of Ramos's offense and criminal history, his institutional disciplinary record and substance-abuse history, the approximately seventeen years of federal incarceration already served, those rehabilitative circumstances already reflected in the record, and the extent to which treatment and conditions of supervised release can address legitimate concerns regarding public safety.

Accordingly, Ramos respectfully requests that the Court grant reconsideration and reduce his sentence to time served or to such lesser term as the Court deems appropriate. Alternatively, if reconsideration is deemed procedurally unavailable, Ramos respectfully requests that the Court construe this filing as a renewed motion under 18 U.S.C. § 3582(c)(1)(A), consistent with the prior administrative request and denial reflected in Exhibit 1, and resolve the motion on the legally cognizable grounds and existing record presented herein.

Respectfully submitted,

Dated: September 24, 2026.

FREDDIE ANDREW RAMOS
REG. NO. 29540-280
FCI Beaumont Medium
FEDERAL CORR. INSTITUTION
P.O. BOX 26040
BEAUMONT, TX 77720

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2026, a true and correct copy of the above and foregoing Defendant Freddie Andrew Ramos's Motion for Reconsideration of Order Denying Compassionate Release Or, in the Alternative, Renewed Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) was sent via U.S. Mail, postage prepaid, to Mary F. Kucera, Assistant U.S. Attorney, in the U.S. Attorney's Office, 800 Franklin, Suite 280, Waco, TX 76701.

FREDDIE ANDREW RAMOS

**<u>EXHIBIT 1:</u>**
**"Administrative Remedy"**

BP-A0148
HSLC 10

**INMATE REQUEST TO STAFF** CDFRM

**U.S. DEPARTMENT OF JUSTICE** **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) Ms Starr Warden | DATE: 07/09/25 |
|---|---|
| FROM: Freddie Ramos | REGISTER NO.: 29540 280 |
| WORK ASSIGNMENT: E-1 Unit orderly | UNIT: E-1 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

I would like to request a compassionate release or sentence reduction, I do in fact meet the criteria for compassionate release under 18 U.S.C § 3582 (c)(1)(A). Extraordinary and compelling circumstances in my case Freddie Ramos vs U.S.A (5th cir 2009) case # 06:08-CR-174-1 warrant a sentence reduction. Moreover non-retroactive changes to the law and the crack-cocaine disparity have left me with an unjust sentence. Please read my case for more detail.

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
And BP-S148.070 APR 94

**FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER**

**SECTION 6**

*U. S. Department of Justice* *Inmate Request to Staff*
*Federal Bureau of Prisons*

***INMATE REQUEST TO STAFF RESPONSE***

***TO:*** Inmate Name: Ramos, Freddie Andrew
Reg. No.: 29540-280
Unit: E-A

This is in response to your Request for a Compassionate Release, dated July 9, 2025. In your request, you stated that you would like to be considered for a compassionate release based on Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Implementation of U.S.C. 3582, section 2, Extraordinary or Compelling Circumstances. You referenced the following areas in your request as extraordinary or compelling circumstances: your case warrants a sentence reduction, due to the changes in the laws regarding crack-cocaine.

To assist with this matter, a review of your information was completed. It was determined that on April 8, 2009, you were sentenced by the Western District of Texas, to a 300-month aggregate sentence for PWIT 'Crack' Cocaine, a Schedule II Narcotic Drug Controlled Substance; Possession of a Firearm by a Convicted Felon; and Possession of a Firearm During the Commission of a Drug Trafficking Crime. You have 5-years of supervision to follow.

In regard to your request for a reduction of sentence, your request does not meet the requisite criteria set forth in Program Statement 5050.50, Compassionate Release/Reduction in Sentence. The Bureau of Prisons does not have the authority, through its compassionate release/reduction in sentence procedures, to reduce an inmate's sentence based on amendment of the sentencing guidelines. You may petition your sentencing court directly and request to be resentenced under the current sentencing guidelines.

Based on the information above, the request for compassionate release under Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Implementation of U.S.C. 3582 is denied at this time.

[signature] 7/28/2025

M. Starr, Complex Warden Date

FREDDIE ANDREW RAMOS
REG. NO. 29540-280
FCI Beaumont Medium
FEDERAL CORR. INSTITUTION
P.O. BOX 26040
BEAUMONT, TX 77720

September 24, 2026

Clerk of Court
U.S. District Court
Western District of Texas
Waco Division
800 Franklin Ave., Room 380
Waco, Texas 76701

RE: *United States v. Ramos*
Crim No. 6:08-cr-00174-ADA-1

To the Clerk of Court:

Enclosed please find and accept for filing Defendant Freddie Andrew Ramos's Motion for Reconsideration of Order Denying Compassionate Release Or, in the Alternative, Renewed Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) . Please submit this document to the Court.

Thank you for your assistance in this matter.

Sincerely,

FREDDIE ANDREW RAMOS
Appearing *Pro Se*

*Encl. as noted*

SS FIRMLY TO SEAL

SUSTAINABLE FORESTRY INITIATIVE Certified Sourcing www.sfiprogram.org SFI-00061

PAPER POUCH ecycle.info

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

UNITED STATES POSTAL SERVICE

PRIORITY MAIL®

UNITED STATES POSTAL SERVICE. Retail

US POSTAGE PAID

$12.90

Origin: 77070
09/24/26
4800420059-23

PRIORITY MAIL®

0 Lb 6.00 Oz

RDC 03

CTED DELIVERY DAY: 09/26/26

C096

RM 380
800 FRANKLIN AVE
WACO TX 76701-1934

USPS TRACKING® #

9505 5104 4802 6267 3059 96

ictions apply).*

nany international destinations.

rm is required.

ns exclusions see the

ty and limitations of coverage.

2025

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

FROM: 1418

FREDDIE ANDREW RAMOS
REG. NO. 29540-280
FCI Beaumont Medium
FEDERAL CORR. INSTITUTION
P.O. BOX 26040
BEAUMONT, TX 77720

TO:

Clerk of Court
U.S. District Court
Western District of Texas
Waco Division
800 Franklin Ave., Room 380
Waco, Texas 76701

RECEIVED
SEP 30 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY DEPUTY CLERK

PAPER POUCH ecycle.info

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; November 2025; All rights reserved.